**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **vs.** | ) | **CRIMINAL NO.  08-0224-WS** |
| | ) | |
| **WILLIAM ERIC BROWN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter is before the Court on the defendant's motion to dismiss the indictment.  (Doc. 16).  The government has filed a response and the defendant a reply, (Docs. 20, 22), and the motion is ripe for resolution.  After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion to dismiss is due to be denied.

**BACKGROUND**

The defendant faces a one-count indictment charging him with knowingly failing to register and update a registration as required by the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. §§ 16901 et seq., in violation of 18 U.S.C. § 2250(a).  (Doc. 11).

The defendant was convicted in 1996 of "indecent liberties with a minor" in violation of North Carolina law.  He was released from state custody in 1998, and he registered as a sex offender in North Carolina.  He traveled in interstate commerce in or about June 2007, moving to Alabama, where he resided until his arrest in this district in June 2008.  (Doc. 11 at 1; Doc. 16 at 1).[1]  He did not register as a sex offender in

_____

[1]Since the defendant has resided in Alabama since 2007, but only "for a period" in this district, (*id*.), it is clear that he changed residences within Alabama after moving to the state.

Alabama, and he makes no claim that Alabama had no registration requirement applicable to him.[2]  Nor does he dispute that every state and the District of Columbia has some form of sex offender registration law, all preceding the passage of SORNA.  (Doc. 20 at 3).

On July 27, 2006, President Bush signed the Adam Walsh Act into law.  That law includes, inter alia, SORNA and Section 2250(a).  SORNA dictates that "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides ...."  42 U.S.C. § 16913(a).  SORNA contemplates that "initial registration" will occur before release from incarceration, unless no term of imprisonment is imposed, in which case initial registration will occur within three business days of sentencing.  *Id.* § 16913(b).  SORNA also provides that, within three days of changing residences, a sex offender will appear in person in a relevant state or other jurisdiction and update "the information required for that offender in the sex offender registry" maintained by the jurisdiction.  *Id.* § 16913(c).  A sex offender must keep his registration updated for a prescribed time, *id.* § 16915, and must periodically verify his information in person.  *Id.* § 16916.

SORNA also places obligations on the states and other jurisdictions, in particular, to "maintain a jurisdiction-wide sex offender registry conforming to the requirements of this subchapter."  42 U.S.C. § 16912(a).  The sex offender is to provide personal information for this registry, including name and sex, Social Security number, residence address, place of employment or school enrollment, license plate number and vehicle description, and other information as prescribed by the Attorney General.  *Id.* § 16914(a).  The jurisdiction must provide additional information on the sex offender, including physical description and current photograph, text of the law violated, criminal history, fingerprints, palm prints and DNA sample, photocopy of a valid identification card, and other information as required by the Attorney General.  The jurisdiction must make available over the Internet most information about each sex offender in its registry, and it

---

[2]*See* Ala. Code § 13A-11-200; *id.* §§ 15-20-1 et seq.

-2-

must design its site so as to be capable of fully participating in a national sex offender website.  *Id*. § 16918(a).  Each jurisdiction has until at least July 27, 2009 in which to implement SORNA's requirements, and the Attorney General may extend that deadline by up to two years.  *Id*. § 16924.  As of the defendant's indictment in June 2008, Alabama had not implemented these requirements.  (Doc. 20 at 9).

The defendant raises the following arguments: (1) that SORNA violates the Commerce Clause; (2) that he has no duty to register under SORNA because Alabama has not yet implemented it; (3) that the prosecution violates his due process rights; and (4) that he could not have knowingly failed to register, given the government's failure to advise him of SORNA's requirements.  The Court addresses these contentions in turn.

## I. Commerce Clause Violation.

The defendant asserts that SORNA and Section 2250(a) exceed Congress's power under the Commerce Clause.  (Doc. 16 at 3-4; Doc. 22 at 1-2).  While acknowledging the difficulty of the issue, the Court follows the large majority of cases rejecting Commerce Clause challenges.[3]

---

[3]*E.g., United States v. May*, 2008 WL 2917766 at *8-9 (8th Cir. 2008); *United States v. Gagnon*, 2008 WL 3523181 at *5 (D. Me. 2008); *United States v. Van Buren*, 2008 WL 3414012 at *12-13 (N.D.N.Y. 2008); *United States v. Senogles*, 2008 WL 2971447 at *7-10 (D. Minn. 2008); *United States v. Oakley*, 2008 WL 2986256 at *3 (D. Neb. 2008); *United States v. Trent*, 2008 WL 2897089 at *2-5 (S.D.  Ohio 2008); *United States v. Zuniga*, 2008 WL 2184118 at *17-19 (D. Neb. 2008); *United States v. Cochran*, 2008 WL 2185427 at *2 (E.D. Okla. 2008); *United States v. David*, 2008 WL 2045830 at *8 (W.D.N.C. 2008); *United States v. DiTomasso*, 552 F. Supp. 2d 233, 245-47 (D.R.I. 2008); *United States v. Craft*, 2008 WL 1882904 at *8-11, 19-21 (D. Neb. 2008); *United States v. Mason*, 2008 WL 1882255 at *1-3 (M.D. Fla. 2008); *United States v. Holt*, 2008 WL 1776495 at *3 (S.D. Iowa 2008); *United States v. Akers*, 2008 WL 914493 at *2-3 (N.D. Ind. 2008); *United States v. Utesch*, 2008 WL 656066 at *12-14 (E.D. Tenn. 2008); *United States v. Dixon*, 2007 WL 4553720 at *4-5 (N.D. Ind. 2007); *United States v. Elliott*, 2007 WL 4365599 at *2-3 (S.D. Fla. 2007); *United States v. Gould*, 526 F. Supp. 2d 538, 546-47 (D. Md. 2007); *United States v. Adkins*, 2007 WL 4335457 at *6-7 (N.D. Ind. 2007); *United States v. Howell*, 2007 WL 3302547 at *17-18 (N.D. Iowa 2007);

## II.  Lack of Duty to Register.

The defendant notes that Congress did not specify an effective date for SORNA, and he concludes that this legislative silence allows him to rely on a statement by the Attorney General to show that no sex offender has any duty under SORNA until a relevant jurisdiction implements its requirements.  (Doc. 16 at 5).  Because, as the parties agree, Alabama has not implemented SORNA, the defendant concludes that he cannot be prosecuted for failure to register under SORNA.  (*Id*. at 7).

"It is well established that, absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment."  *Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991); *accord Johnson v. United States*, 529 U.S. 694, 702 (2000); *Goodman v. United States*, 151 F.3d 1335, 1336 n.1 (11th Cir. 1998).  SORNA was enacted on July 27, 2006, and the defendant identifies nothing within SORNA or "its evident purpose" with which to "rebut the presumption that it became effective at once."  *Gozlon-Peretz*, 498 U.S. at 404-05.  Certainly the text of the registration requirement does not hint at a delayed effective date.  42 U.S.C. § 16913(a), (c) ("A sex offender shall register, and keep the registration current," the latter to be accomplished "not later than 3 business days after each [reportable] change").[4]  Nor would it appear that the congressional

---

*United States v. Pitts*, 2007 WL 3353423 at *3-5 (M.D. La. 2007); *United States v. Beasley*, 2007 WL 3489999 at *9 (N.D. Ga. 2007); *United States v. Lawrance*, 2007 WL 5271934 at *6-7 (W.D. Okla. 2007); *United States v. Gonzales*, 2007 WL 2298004 at *9 (N.D. Fla. 2007); *United States v. Mason*, 510 F. Supp. 2d 923, 931-32 (M.D. Fla. 2007); *United States v. Hinen*, 487 F. Supp. 2d 747, 757-58 (W.D. Va. 2007).  *Contra United States v. Powers*, 544 F. Supp. 2d 1331, 1333-36 ((M.D. Fla. 2008) (Section 2250(a) is unconstitutional); *United States v. Waybright*, 2008 WL 2380946 at *4-11 (D. Mont. 2008) (Section 2250(a) is constitutional, but Section 16913 is not); *cf. United States v. Thomas*, 534 F. Supp. 2d 912, 920-22 (N.D. Iowa 2008) (Section 16913 is constitutional under the Necessary and Proper Clause but not under the Commerce Clause).

[4]It is true that Section 16913(c) requires a sex offender to update information on his address, employment, school, vehicle and license plate any time he changes name,

purpose "to protect the public from sex offenders and offenders against children," *id*. §
16901, would be furthered by exempting sex offenders from the federal registration
requirement for up to five years while states implement the statute.  The defendant offers
no rejoinder to these points.

      Although unnoted by the defendant in this portion of his brief, Congress did
provide as follows:

> The Attorney General shall have the authority to specify the
> applicability of the requirements of this subchapter to sex offenders
> convicted before July 27, 2006 or its implementation in a particular
> jurisdiction, and to prescribe rules for the registration of any such sex
> offenders and for other categories of sex offenders who are unable to
> comply with subsection (b) of this section.

42 U.S.C. § 16913(d).  Congress thereby delegated to the Attorney General the authority
to decide *who* should be covered by the registration requirement; it did not delegate
authority to decide *when* the registration requirement would begin.  Had the Attorney
General determined that only those convicted after implementation were covered, as a
practical matter no one could have been required to comply with SORNA before
implementation.  Such a determination would have had the indirect effect of postponing
any registration requirement, but it would not alter the clear language of Section 16913(d)
delegating only the authority to determine who is covered, not the effective date of
coverage.  At any rate, since the Attorney General determined that SORNA applies to all

---

residence, employment or student status, even though some jurisdictions (including
Alabama) do not require updated information except when changing residence and do not
require the extensive information demanded by SORNA.  Thus, a sex offender could be
placed in the position of having to update under SORNA at a time the jurisdiction does
not accept updated information or of having to provide information the jurisdiction does
not accept.  These circumstances might raise a due process concern in a given case, *but
see infra* Part III.B, and they might trigger application of Section 2250(b)'s affirmative
defense, but they give no "clear direction" to hold the entirety of SORNA's registration
requirements in abeyance for years until such inevitable discontinuities are rectified by
implementation.

sex offenders, including those convicted before July 27, 2006,[5] he thereby declined to exercise any indirect authority he might have possessed to postpone SORNA's effective date by extending coverage only to those convicted after implementation.

Because SORNA provides no clear direction otherwise, and because any authority it may have delegated the Attorney General to provide such clear direction went unexercised by him when he specified who was covered by SORNA, the presumption of an effective date corresponding to enactment date remains unrebutted.  The registration requirements of SORNA thus apply to the defendant regardless of Alabama's implementation vel non of the statute.

Even if it were somehow open to the defendant to show that the Attorney General (acting beyond his delegated authority to decide who is covered by SORNA) was empowered on his own to overcome the presumption established by *Gozlon-Peretz* and like cases, the snippet offered by the defendant would not suffice to do so.  In extensive guidelines, the Department of Justice provided as follows:

> With respect to sex offenders with pre-SORNA or pre-SORNA-implementation convictions who remain in the prisoner, supervision, or registered sex offender populations at the time of implementation ... jurisdictions should endeavor to register them in conformity with SORNA as quickly as possible ....  In other words, sex offenders in these existing sex offender populations ... must be registered by the jurisdiction when it implements the SORNA requirements in its system ....

National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38,030, 38,063-64 (July 2, 2008).  According to the defendant, this language "makes plain that sex offenders with 'pre-SORNA implementation convictions' ... have a duty to register only after a jurisdiction implements the federal law."  (Doc. 16 at 5).  The passage, however, addresses only the jurisdictions' obligation to initially register sex offenders with whom the jurisdiction is in contact when it implements SORNA; it says nothing about the obligation of sex offenders to affirmatively come forward for registration.  That

---

[5]28 C.F.R. § 72.3 (2007).

the states may have no duty to comply with SORNA's initial registration requirements before they implement SORNA says nothing about sex offenders' responsibility to register and update their registrations before implementation.

There is no doubt on this matter but, even if there were, it would be dispelled by review of the Department of Justice's rulemaking document accompanying the interim rule specifying that SORNA applies to all sex offenders regardless of date of conviction. That document explicitly states as follows:

> In contrast to SORNA's provision of a three-year grace period for jurisdictions to implement its requirements, SORNA's direct federal law registration requirements for sex offenders are not subject to any deferral of effectiveness. They took effect when SORNA was enacted on July 27, 2006, and currently apply to all offenders in the categories for which SORNA requires registration.

Application of the Sex Offender Registration and Notification Act, 72 Fed. Reg. 8894, 8895 (February 28, 2007). It is quite impossible in light of this language to conclude that the Attorney General has embraced the view that sex offenders need not register under SORNA until a relevant jurisdiction implements its requirements.

In sum, the defendant was required to register under SORNA despite Alabama's failure to implement SORNA.[6]

## III. Due Process Violation.

The defendant argues that his due process rights were violated both because North Carolina authorities failed — in 1998 — to advise him of his obligation to register under SORNA and because, given Alabama's failure to implement SORNA, it was impossible for him to comply with it. (Doc. 16 at 7). The Court addresses these contentions despite

---

[6]The Court thus reaches the same result as others addressing the issue, albeit for somewhat different reasons. *See Trent*, 2008 WL 2897089 at *7; *DiTomasso*, 552 F. Supp. 2d at 239-40; *Utesch*, 2008 WL 656066 at *5; *Gould*, 526 F. Supp. 2d at 542; *Pitts*, 2007 WL 3353423 at *7.

the defendant's failure, in his twelve-line, five-sentence argument, to support them.

### A.  Notice of Obligations under SORNA.

Other SORNA defendants raising similar arguments have invoked *Lambert v. California*, 355 U.S. 225 (1957).  There, a Los Angeles ordinance required any felon within the city for more than a few days to register with the police.  The Court held that, because the prosecution attacked "conduct that is wholly passive - mere failure to register," and did not involve "the failure to act under circumstances that should alert the doer to the consequences of his deed" — that is, "circumstances which might move one to inquire as to the necessity of registration" — the maxim that "ignorance of the law is not an excuse" would not control but that "actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under the ordinance can stand."  *Id*. at 228-29.

It is not clear what relevance *Lambert* has to SORNA, since it "concerns the mens rea that is necessary before the State may convict an individual of crime," *Texaco, Inc. v. Short*, 454 U.S. 516, 537 n.33 (1982) — the Los Angeles ordinance required none, 355 U.S. at 227 — while Section 2250(a) specifies that the failure to register must be "knowin[g]."[7]  Even if *Lambert* does apply, it can be satisfied either by actual knowledge of the registration requirement,  "proof of the probability of such knowledge," or "circumstances which might move [the defendant] to inquire as to the necessity of

---

[7]*Lambert* has not been widely received or expansively read.  *See, e.g., Short*, 454 U.S. at 537 n. 33 ("Its application has been limited, lending some credence to Justice Frankfurter's colorful prediction in dissent that the case would stand as 'an isolated deviation from the strong current of precedents - a derelict on the waters of the law.'"); *United States v. Giles*, 640 F.2d 621, 628 (5th Cir. 1981) ("The sweep of the *Lambert* case has been limited by subsequent decisions of the Supreme Court, lest it swallow the general rule that ignorance of the law is no excuse.").  The defendant has not requested the Court to read *Lambert* beyond its narrow confines and, in light of this judicial skepticism, the Court would be loathe to do so.

registration."  *E.g., United States v. Denis*, 297 F.3d 25, 29 (1st Cir. 2002) (*Lambert* applies only if there is an absence of such circumstances).

Both actual knowledge of the registration requirement and the probability of such knowledge depend on "proof" that the parties have not provided, and the issue cannot be resolved on motion to dismiss.[8]  There are, however, on this record sufficient circumstances to impose on the defendant a duty of inquiry and thus satisfy the due process requirements suggested in *Lambert*.

First, the defendant knew that he had been convicted of indecent liberties with a minor and knew that this constituted him a sex offender.  (Doc. 16 at 1).  Second, he was notified in 1998 of his duty to register under North Carolina's community notification law, (*id*. at 7), including his duty to notify North Carolina authorities of any change of address.  (Doc. 20 at 1).  Third, he complied with the North Carolina law by registering, (*id*. at 1), demonstrating his understanding of his obligation.  Fourth, the Jacob Wetterling Act has addressed registration of sex offenders on a national level, by encouraging states to adopt registration statutes, since 1994.  42 U.S.C. § 14071.  Fifth, every single state has some form of community notification act, (Doc. 20 at 3), and both media attention to, and public discussion of, these laws has been intense nationally for years.

The defendant is thus in no better position than the defendant in *Deni*s, who unsuccessfully invoked *Lambert* to thwart a prosecution under 18 U.S.C. § 922(g)(9) for possessing a firearm after being convicted of a misdemeanor crime of domestic violence. The First Circuit, following several others on the subject, made short work of the contention.  Firearms are subject to "a host of state and federal regulations," and "[t]he possibility of regulation increased when [the defendant] was convicted of a crime of domestic violence."  297 F.3d at 29 (internal quotes omitted).  "[T]he possession of a gun, especially by anyone who has been convicted of violent crime, is ... a highly regulated

---

[8]The Court notes that the defendant does not assert that he lacked actual knowledge of the registration requirement.

activity, and everyone knows it. ...  Unlike mere presence in a certain city, possession of a firearm after a domestic violence conviction is not so presumptively innocent as to fall within the narrow confines of the *Lambert* exception. ...  Rather, it is a circumstance which might move one to inquire as to any applicable regulations or prohibitions. ...  Not surprisingly, therefore, courts addressing the question have held uniformly that a domestic violence conviction is enough to put a defendant on notice that subsequent possession of a gun might be subject to restrictions."  *Id*. at 29-30 (citations and internal quotes omitted).

Convicted sex offenders have, for many years, been subjected to increasingly pervasive regulation and public scrutiny, "and everyone knows it."  Unlike being present in a city, being a convicted sex offender "is not so presumptively innocent as to fall within the narrow confines" of *Lambert*, and one in the defendant's position should have been "move[d] ... to inquire as to any applicable regulations or prohibitions."  The Court thus concludes that the defendant received all the notice of his obligations under SORNA to which he was constitutionally due.[9]

### B.  Impossibility of Compliance.

Relying on a Tenth Circuit case, the defendant asserts that "[c]riminalizing an act which is impossible to perform violates the Due Process Clause's guarantee of fundamental fairness."  (Doc. 16 at 7).  Assuming that this statement accurately reflects the law of this Circuit, and assuming that the objection is not adequately answered by Section 2250(b)'s provision of an affirmative defense available when "uncontrollable circumstances prevented the individual from complying," it was not impossible for the

---

[9]As best the Court can determine, this is the result universally reached in other SORNA cases.  *See, e.g., Senogles*, 2008 WL 2971447 at *17-18; *Oakley*, 2008 WL at *15-17; *Trent*, 2008 WL 2897089 at *8-9; *Waybright*, 2008 WL 2380946 at *16-17; *David*, 2008 WL 2045830 at *7-8; *DiTomasso*, 552 F. Supp. 2d at 244; *Utesch*, 2008 WL 656066 at *9; *Gould*, 526 F. Supp. 2d 544; *Pitts*, 2007 WL 3353423 at *7.

defendant to comply with SORNA.

The defendant's threshold duty as relevant to this prosecution was to register as a sex offender in Alabama when he moved there in 2007. 42 U.S.C. § 16913(a), (c). This could not have been impossible, since Alabama law did and does require sex offenders to do just that. Ala. Code § 13A-11-200; *id*. § 15-20-23. The defendant likewise had the duty under SORNA to update his information upon changing residences within the state. 42 U.S.C. § 16913(c). Alabama law imposes a similar obligation. Ala. Code § 13A-11-200; *id*. § 15-20-23.[10]

The information that SORNA requires a sex offender to provide, when registering or updating a registration, is clearly more expansive than that required by Alabama law, as the defendant notes. (Doc. 16 at 6). The defendant argues that he could not comply with SORNA because Alabama is not equipped to collect and manage this additional information. (*Id*.). First, and dispositively, the defendant has not attempted to show that his prosecution is based on his failure to inform Alabama authorities of his license plate number or to provide a DNA sample, rather than on his failure to register at all. Second, he has not attempted to show that, even if Alabama has no procedure for collecting and managing this information, it is incapable of receiving it or refuses to receive it when provided. Third, he has not attempted to show that, whatever deficiencies exist in Alabama's ability to receive, collect or manage this additional information, it was impossible for him to offer to provide it. The Court therefore joins the swelling chorus of

---

[10]The government suggests that the defendant also had a duty under SORNA to notify North Carolina of his change of residence to Alabama. (Doc. 20 at 1-2, 3, 4, 8). SORNA requires a sex offender to update his registration in each jurisdiction where he resides, is employed, or is a student. This updating must occur within three business days after the change in status. 42 U.S.C. § 16913(a), (c). It is not immediately clear how a sex offender who has already left a state can still be residing, working or studying there so as to trigger the update requirement in that jurisdiction. Because the government has not explained its position, and because resolution of the defendant's motion does not depend on it, the Court leaves the question for another day.

cases rejecting similar challenges.[11]

**IV.  No Knowing Failure to Register.**

A successful prosecution requires the government to prove that the defendant "*knowingly* fail[ed] to register or update a registration" under SORNA.  18 U.S.C. § 2250(a) (emphasis added).  The defendant argues that, even if the Due Process Clause did not require that he be explicitly notified of his obligations under SORNA, the statute itself so required.  Given the admitted failure to so notify him, he concludes that SORNA precludes the government from proving that his failure to register was knowing.  (Doc. 16 at 8-9).

The defendant's argument is based on Section 16917, which requires state officials to notify convicted sex offenders, in connection with sentencing or before release from custody, of their duties under SORNA.  For those sex offenders (such as the defendant) already sentenced and not in custody, the Attorney General is directed to prescribe rules to accomplish this notification.

The defendant insists that two district courts have held that notification under Section 16917 is a statutory predicate to finding a knowing failure to register, but neither did so.  *United States v. Barnes*, 2007 WL 2119895 (S.D.N.Y. 2007), states only that "the Attorney General has the duty to notify sex offenders of their registration requirements," without suggesting that such notification is a prerequisite to prosecution.  *Id*. at 4.  *United States v. Smith*, 528 F. Supp. 2d 615 (S.D.W. Va. 2007), held only that a sex offender convicted before July 27, 2006 could not be prosecuted for failure to register in November 2006, because the Attorney General had not then released his interim rule under Section 16913(d) making SORNA retroactive to persons convicted before

---

[11]*E.g., Van Buren*, 2008 WL 3414012 at *6-8; *Waybright*, 2008 WL 2380946 at *16; *David*, 2008 WL 2045830 at *4-5; *DiTomasso*, 552 F. Supp. 2d at 239; *Utesch*, 2008 WL 656066 at *7-8; *Pitts*, 2007 WL 3353423 at *7.

enactment.  The Court suggested that the defendant "could not have *knowingly* violated SORNA" in November 2006, but explained that this was because "SORNA did not apply to him," 528 F. Supp. 2d at 620 (emphasis in original) — not because he had received no notice under Section 16917.  To the extent *Smith* can be read as the defendant suggests, it is dicta, the underlying reasoning of which is obscure.

The courts that have addressed the issue presented by the defendant have rejected the notion that SORNA makes notice under Section 16917 a necessary predicate to prosecution.[12]  Absent any explanation from the defendant how SORNA could be read to support such a result, the Court declines to rule that, simply by laying on jurisdictions a duty to notify sex offenders of their duties under SORNA, Congress sub silentio made receipt of such notification an element of a prosecution for failure to register.

## CONCLUSION

For the reasons set forth above, the defendant's motion to dismiss is **denied**.

DONE and ORDERED this 28th day of August, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[12]*Zuniga*, 2008 WL 2184118 at *15 ("[R]eceipt of notice as required under § 16917(a) is not an element of a[n] 18 U.S.C. § 2250 offense."); *Craft*, 2008 WL 1882904 at *17 (same); *Dixon*, 2007 WL 4553720 at *4 (Section 16917 "requires officials to give notice, but does not make receipt of notice an element of a criminal offense"); *cf. Trent*, 2008 WL 2897089 at *7 (when the defendant received notice of his obligation to register under state law, "the lack of notice in accordance with § 16917 is not a defense to that prosecution.").